IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-175-FL

| | | |
|---|---|---|
| ESSENTIA INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HERBERT STEPHENS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for judgment on the pleadings and to dismiss counterclaims for failure to state a claim. (DE 15). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the reasons that follow, plaintiff's motion is granted.

**STATEMENT OF THE CASE**

Invoking the court's diversity jurisdiction, plaintiff commenced this action April 28, 2020, for declaratory judgment that defendant is not entitled under the policy at issue to underinsured motorist benefits in the amount of $100,000.00. In response, defendant counterclaimed that plaintiff has engaged in unfair and deceptive acts and practices in violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), breached its contract, breached its duty of good faith, and wrongfully interfered with prospective contract. Defendant seeks punitive damages and a declaration that plaintiff has a duty to provide this coverage to defendant.

On August 12, 2020, plaintiff filed the instant motion for judgment on the pleadings on its own declaratory judgment claim, and to dismiss defendant's counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

The facts alleged in the pleadings, viewed in the light most favorable to defendant, may be summarized as follows. On September 22, 2019, defendant was rear-ended by a drunk driver while riding as a passenger in his own car. (Compl. ¶ 1; Answer ¶ 6; Counterclaim ¶¶ 9-10). The offending driver's vehicle was insured under another's name by GEICO Choice ("GEICO") in the amount of $50,000.00 for bodily injury liability. (Compl. ¶ 7; Compl. Ex. E, (DE 1-5) at 1; Answer Ex. 2, (DE 10-2) at 1). Defendant held an underinsured motorist ("UIM") policy with Integon Preferred Insurance Company ("Integon") that provided coverage in the amount of $100,000.00 per accident, and defendant held a similar policy with Hagerty Insurance Agency, LLC, ("Hagerty Insurance Agency") underwritten by plaintiff (the "Essentia Policy"). (See Compl. ¶¶ 8-10; Compl. Ex. A, (DE 1-1) at 1, 11-13[1]).

On March 11, 2020, defendant executed a covenant not to enforce judgment with GEICO for $50,000.00 (the "GEICO Covenant") and an underinsured motorist release with Integon for $50,000.00 (the "Integon Release"). (Compl. ¶¶ 12-14; Answer ¶¶ 12-14; Compl. Exs. B, C (DE 1-2, -3). Funds from Integon and GEICO were deposited in defendant's counsel's trust account on March 12, 2020. (Answer ¶ 17). Both documents were mailed March 16, and the GEICO Covenant was received by GEICO on March 20 and the Integon Release by Integon sometime

---

[1]     When referencing portions of the exhibits attached to the respective pleadings, the court references the pagination assigned by the court's case management and electronic case filing system ("CM/ECF") rather than the individual exhibit's pagination.

2

later. (Compl. ¶¶ 12-14; Answer ¶¶ 12-14; Compl. Exs. B, C (DE 1-2, -3)).    On March 16, a portion of these funds were dispersed to defendant.  (Compl. ¶ 19; Answer ¶ 19).

Also on March 16, 2020, plaintiff, through its representative Stephen G. Shepstone ("Shepstone"), learned of the September 22, 2019, accident through another party making a claim, under defendant's policy with plaintiff, based on the accident.  (Compl. ¶ 16; Answer ¶ 16; Pl.'s Memo. Supp. (DE 16) 5).  On March 17, after defendant had mailed the GEICO Covenant and Integon Release, plaintiff reached out to defendant and informed him of the third party's claim.  (Answer ¶ 16; Pl.'s Memo. Supp. (DE 16) 5).  This conversation, according to defendant, was how defendant "became aware that he had underinsured coverage through [p]laintiff's policy." (Answer ¶ 16).  Accordingly, the same day, defendant mailed a letter to plaintiff advising that "GEICO ha[d] tendered its liability limits of $50,000" and that defendant's counsel was preparing a lawsuit against the impaired driver, and asking plaintiff to advise defendant if plaintiff "wish[ed] to advance payment to [defendant] in an amount equal to the tentative settlement of $50,000.00." (Compl. Ex. D (DE 1-4)).  Defendant avers that same day, March 17, 2020, he contacted GEICO to advise it of his policy with plaintiff, that he had mailed the GEICO Covenant before finding this out, and, accordingly, that he requested GEICO to hold the GEICO Covenant in abeyance. (Answer ¶ 18).  GEICO initially agreed to this request. (Id.).

The following day defendant sent a letter to plaintiff demanding the underinsured motorist limit of $100,000.00 under the Essentia policy.  (Compl. Ex. E (DE 1-5)).  Plaintiff responded that defendant had not followed the mandatory notice of settlement requirements under the policy and North Carolina law.  It was explained that accordingly no underinsured motorist coverage was available to him.  (Compl. ¶ 26; Compl. Ex. F (DE 1-6)).  Defendant responded that he had "placed all settlement discussions on hold and all parties agree[d] to allow Hagerty [Insurance Agency] the

3

opportunity to review the claim and determine if Hagerty [Insurance Agency] would like to preserve its right of subrogation by advancing payment of the liability limits of $50,000." (Compl. Ex. G, (DE 1-7) at 1). The funds that had previously been dispersed to defendant were returned to defendant's counsel's trust account on March 20, 2020. (Compl. ¶ 19; Answer ¶ 19).

On April 8, 2020, plaintiff contacted GEICO, inquiring whether it intended to reopen settlement discussions with defendant, to which GEICO responded in the affirmative. (Answer ¶ 23; Pl.'s Memo. Supp. Mot. (DE 16) at 6). Plaintiff informed GEICO that if it were to do so, plaintiff would seek subrogation against GEICO's insured. (Answer ¶ 23; Pl.'s Memo. Supp. Mot. (DE 16) at 6). According to defendant, because of this, GEICO informed defendant that it could not voluntarily agree to withhold the GEICO Covenant. (Answer ¶ 23).

The Essentia Policy states, in relevant part, that plaintiff "do[es] not provide coverage for bodily injury caused by an underinsured motor vehicle and sustained by any insured . . . [i]f that insured . . . settles the bodily injury claim without [plaintiff's] consent." (Compl. Ex. A, (DE 1-1) at 12). The policy states further, however, that the "exclusion does not apply if [plaintiff] . . . [has] been given written notice in advance of a settlement . . . and . . . [plaintiff] fail[s] to advance payment to the insured in an amount equal to the tentative settlement within thirty days . . . of such written notice." (Id.). The policy also states under the provision regarding combined uninsured/underinsured motorists coverage that if the insurer "make[s] a payment under this coverage and the person to or from whom payment was made has a right to recover damages from another, [the insurer] shall be subrogated to that right." (Id. at 13). "Further, the execution of a covenant not to enforce judgment by the injured party shall not preclude [the insurer] from pursuing [its] right to sue for or otherwise recover any payment made under this coverage from anyone else who may be liable." (Id.). The rights do not apply, however, against "the owner or

operator of an under-insured motor vehicle if [the insurer] ha[s] been given written notice in advance of a settlement and fail[s] to advance payment in an amount equal to the tentative settlement within 30 days following receipt of such notice." (Id.).

## COURT'S DISCUSSION

A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the [the non-movant]," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

Similarly, motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are typically adjudged under the same standard as motions under Rule 12(b)(6). See Butler v. United States, 702 F.3d 749, 752 (4th Cir. 2012). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc., 932 F.3d 268, 274 (4th Cir. 2019) (quotation omitted). "A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." Nat'l Fid. Life Ins. Co. v. Karaganis, 811

F.2d 357, 358 (7th Cir. 1987); see Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014);

Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP, 801 F. App'x 915, 916 (4th Cir. 2020).

Under both standards, the court may consider documents attached to the pleadings. Fed.

R. Civ. P. 10(c); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

B.    Analysis

    1.    Motion for Judgment on the Pleadings

Plaintiff seeks a declaration by the court that defendant is not entitled to underinsured

motorist benefits under the Essentia Policy for any bodily injuries sustained by defendant as a

result of the accident described in the pleadings.

"Pursuant to North Carolina law, the interpretation of an insurance policy is a question of

law" for the court.[2]  State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d

249, 254 (4th Cir. 2003).  "As with all contracts, the object of construing an insurance policy is to

arrive at the insurance coverage intended by the parties when the policy was issued."  Harleysville

Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 9 (2010) (quotation omitted).  "When

the policy language is clear and unambiguous, a court is required to enforce the policy as written."

Cont'l Cas. Co. v. Amerisure Ins. Co., 886 F.3d 366, 371 (4th Cir. 2018); see also State v. Camp,

286 N.C. 148, 152 (1974) ("Where the language of a statute is clear and unambiguous, there is no

room for judicial construction and the courts must give [the statute] its plain and definite meaning,

and are without power to interpolate, or superimpose, provisions and limitations not contained

therein." (quotation omitted)).  However, "[t]he words used in the policy having been selected by

the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor

_____

[2]      The parties do not dispute North Carolina law applies here.  (Pl.'s Memo. Supp. Mot. (DE 16) at 9-10; Def.'s
Memo. Opp'n (DE 18) at 7). Further, North Carolina choice of law is applicable, see Klaxon Co. v. Stentor Elec. Mfg.
Co., 313 U.S. 487, 496, (1941), and guides application of North Carolina substantive law, Fortune Ins. Co. v. Owens,
351 N.C. 424, 428 (2000), and North Carolina statutory law, N.C. Gen. Stat. § 58-3-1.

of the policyholder, or the beneficiary, and against the company." Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354 (1970); see C.D. Spangler Const. Co. v. Indus. Crankshaft & Eng'g Co., 326 N.C. 133, 142 (1990) ("So long as it is reasonable to do so, policy provisions which extend coverage are construed liberally in favor of coverage.").

Further, "[w]here a statute is applicable to a policy of insurance, the provisions of the statute enter into and form a part of the policy to the same extent as if they were actually written in it." Howell v. Travelers Indem. Co., 237 N.C. 227, 229 (1953); Farm Bureau Ins. Co. of N.C. v. Blong, 159 N.C. App. 365, 369 (2003) ("The terms of the [Motor Vehicle Safety and Financial Responsibility] Act are written into every North Carolina automobile liability policy, and where the terms of a policy conflict with those of the Act, the Act will prevail.").

Relevant here, section 20-279.21 of the North Carolina General Statutes, which defines "[m]otor vehicle liability policy" and requires provision of underinsured motorist coverage, states, in pertinent part:

> [n]o insurer shall exercise any right of subrogation or any right to approve settlement with the original owner, operator, or maintainer of the underinsured highway vehicle under a policy providing coverage against an underinsured motorist where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice.

N.C. Gen. Stat. § 20-279.21(b)(4). Thus, the statute provides in plain terms that, if an insured provides written notice to the insurer of a tentative settlement between the insured and an underinsured motorist, and the insurer does not advance payment to the insured in the amount of that tentative settlement within 30 days, the insurer may not exercise its right to approve that settlement or to exercise subrogation rights. Conversely, under the statute, where an insurer receives written notice and advances payment or where an insurer does not receive written notice

7

of a settlement offer at all, the insurer can exercise its right to approve a settlement between its insured and the underinsured motorist. See id.

Although the Supreme Court of North Carolina has not addressed this specific notice provision of section 20-279.21(b)(4), lower North Carolina courts have interpreted it, consistent with the plain text analysis above, to require an insured "to notify the UIM insurance carrier . . . when a settlement offer has been made."  Gurganious v. Integon Gen. Ins. Corp., 108 N.C. App. 163, 166 (1992); Daughtry, 123 N.C. App. 671, 675 (1996) ("Both the statute and case law require a UIM insurer be notified when a settlement offer is made, and when the primary liability insurance carrier has offered the limits of its policy in settlement."). aff'd, 346 N.C. 272 (1997); Williams v. Bowden, 128 N.C. App. 318, 320 (1998) ("The written notice requirement of G.S. § 20–279.21(b)(4) is plain and clear.").

Further, North Carolina courts recognize that failure to notify a UIM insurance carrier in writing pursuant to section 20-279.21(b)(4) before reaching a settlement with the uninsured motorist forfeits the insured's claim under the relevant UIM policy.  See Bowden, 128 N.C. App. at 320; Lloyd v. Coffey, No. COA 13-840, 2014 WL 222023, at *2 (N.C. Ct. App. Jan. 21, 2014); Simpson, North Carolina Uninsured and Underinsured Motorist Insurance § 3:2 ("There is no UIM coverage for an insured who settles his bodily injury claim without the UIM insurer's consent."); id. § 4.3 ("[S]ettlement in violation of the 'consent to settlement' clause almost certainly will work a forfeiture of the insured's UIM claim."); cf. Hoffman v. Great Am. All. Ins. Co., 166 N.C. App. 422, 429 (2004) (explaining under a similar statute that "[p]laintiff's claim for [uninsured motorist] benefits was absolutely barred by his failure to comply with the specific notice requirements as set forth in N.C. Gen. Stat. § 20-279.21(b)(3)(b)").

Applying general principles of North Carolina contract and insurance law, courts have recognized that execution of a covenant not to enforce judgment offered in exchange for tender of the policy limits of the underinsured motorist constitutes a settlement agreement with a tortfeasor and his insurer. See, e.g., Bowers v. State Farm Mut. Auto. Ins. Co., No. 1:17CV825, 2017 WL 6389705, at *3 (M.D.N.C. Dec. 14, 2017) (considering whether claimant's spouse's entry into a "Covenant Not to Enforce," which the court described as a settlement, extinguished claimant's coterminous loss of consortium claim as a binding settlement of her legal claim as well); Guessford v. Pa. Nat. Mut. Cas. Ins. Co., No. 1:12CV260, 2013 WL 5840050, at *4 (M.D.N.C. Oct. 30, 2013) ("[Plaintiff] acknowledges that he 'settled his claim' against the tortfeasor by accepting the full liability policy limits from Nationwide and by executing a covenant not to enforce judgment against the tortfeasor well."); N.C. Farm Bureau, Mut. Ins. Co. v. Bost, 126 N.C. App. 42, 47 (1997) (describing insured's entry into "covenant not to enforce judgment" as "settlement agreement with [tortfeasor] and his carrier"). See generally United States v. Child & Co., 79 U.S. 232, 239 (1870) ("A compromise . . . is an agreement between two or more persons who, to avoid a lawsuit, settle their differences on such terms as they can agree upon." (quotation omitted)).[3]

For example, in Williams v. Bowden, the North Carolina Court of Appeals held that an insured's oral notice of settlement offer from the underinsured motorist's insurer to a UIM insurer was insufficient to trigger the protections of section 20-279.21(b)(4). 128 N.C. App at 319-20.

---

[3] These decisions are reinforced by the common meaning of terms "settlement" and "settle." See, e.g., Settle, 15 Oxford English Dictionary (2d ed. 1989) 82-86 (defining settle as "[t]o fix by mutual agreement"; "[t]o decide, come to a fixed conclusion on (a question, a matter of doubt or discussion); to bring to an end (a dispute) by agreement or intervention"; or "to decide (a case) by arrangement between the contesting parties"); Settle, Black's Law Dictionary 1581 (10th ed. 2014) ("To end or resolve (an argument or disagreement); to bring to a conclusion (what has been disputed or uncertain"; "[t]o come to an understanding;" "[t]o pay."); see also Metric/Kvaerner Fayetteville v. Fed. Ins. Co., 403 F.3d 188, 199 (4th Cir. 2005) (relying on Black's Law Dictionary to interpret terms of North Carolina insurance policy provision); C.D. Spangler, 326 N.C. at 152 ("In construing the ordinary and plain meaning of disputed terms, this Court has used 'standard, nonlegal dictionaries' as a guide.").

9

The court explained that because the insurer had only been given oral notice before its insured executed a "Covenant Not to Enforce Judgment" against the underinsured motorist, it "did not receive the statutorily required written notice; . . . [and] it did not waive its rights" regarding consent to settlement. Id. Therefore, summary judgment in defendant-insurer's favor on plaintiff's UIM claim was proper given plaintiff-insured's failure to adhere to the statutory notice requirement. Id.

In contrast, in North Carolina Farm Bureau, Mutual Insurance Co. v. Bost, the North Carolina Court of Appeals considered an instance of proper adherence to section 20-279.21(b)(4)'s requirements by a UIM insured. 126 N.C. App. 42 (1997). In that case, the underinsured motorist's insurer tendered its policy limits under the motorist's liability policy to Bost, the defendant-insured, in exchange for a limited release and settlement agreement that the court characterized as a covenant not to enforce judgment. Id. at 44, 47. Bost then "properly notified both UIM carriers of her 'Settlement Agreement and Limited Release' and her plans to seek UIM coverage pursuant to [N.C. Gen. Stat.] § 20-279.21(b)(4)." Id. at 48. One of the UIM carriers, "Farm Bureau[,] failed to take steps to preserve its right to approve the settlement as provided by [N.C. Gen. Stat.] § 20-279.21(b)(4)," failing to advance payment for over 90 days after written notice. See id. at 44, 48. Only then did defendant-insured "accept[] [the uninsured motorist's] liability carrier's tender and execute[] the 'Settlement Agreement and Limited Release.'" Id. Under these facts, the court explained that the UIM insurer, Farm Bureau, "ha[d] no right to object to the settlement of the primary claim and [could not] complain when the insured t[ook] steps necessary to seek UIM coverage." Id. at 48-49; see also Wilmoth v. State Farm Mut. Auto. Ins. Co., 127 N.C. App. 260, 265 (1997) ("[A]n insured who has settled with a tortfeasor prior to initiating litigation . . . may initiate an action for such coverage directly against the [UIM] carrier

when the latter has received notice of the settlement in compliance with G.S. § 20–279.21(b)(4) and has waived its rights to approve the settlement.").

Viewing the facts presented in the pleadings in the light most favorable to defendant, no material issue of fact remains to be resolved concerning whether defendant failed to give written notice to plaintiff when he received a settlement offer and before he settled with GEICO and its insured. On March 11, 2020, defendant signed and had notarized the GEICO Covenant, which, by its terms, settled his claim against GEICO's insured in exchange for $50,000.00. (Compl. ¶ 12; Answer ¶ 12; Compl. Exs. B, C (DE 1-2, -3)). Funds from GEICO were deposited in defendant's counsel's trust account on March 12, 2020. (Answer ¶ 17). Those funds were dispersed, in part, to defendant on March 16, 2020, (Answer ¶ 19), the same day that the signed GEICO Covenant was mailed to GEICO. It was only the next day, March 17, that defendant, through counsel, actually notified plaintiff of GEICO's tender of limits offer, (Answer ¶ 16; Pl.'s Memo. Supp. Mot. (DE 16) at 5; Compl. Ex. D (DE 1-4)).

In sum, on or before March 16, 2020, defendant had not only received a settlement offer from GEICO but had actually reached a settlement with its insured within the meaning of the statute. Defendant had executed a covenant not to enforce, which fixed by mutual agreement that defendant would release GEICO from any obligation arising from the accident and that defendant would not attempt to collect any sum from GEICO's insured as a result of said accident, resolving any controversy between the two parties. Defendant did not notify plaintiff of the offer of settlement (notice being given on March 17, 2020, based on the undisputed facts in parties' pleadings) prior to entering this settlement, violating section 20-279.21(b)(4)'s "plain and clear" written notice requirement. Bowden, 128 N.C. App. at 320. Accordingly, under § 20-

11

279.21(b)(4), plaintiff retained the ability to exercise its right to approve settlement with the uninsured motorist when defendant entered into the settlement.

The facts alleged mirror those in <u>Bowden</u>, where "[n]o written notice of the potential underinsured motorist claim was sent to [plaintiff-insurer] prior to [defendant-insured's] acceptance of the proposed offer from" the underinsured motorist's insurer. <u>See</u> 128 N.C. App. at 319. Similarly, in consideration for a monetary sum paid by the underinsured motorist's insurer on behalf of its insured, defendant gave a "Covenant Not to Enforce Judgment" against the insured. <u>See id.</u> (considering this exact scenario). Accordingly, defendant's UIM claim was, and is, forfeited because plaintiff did not waive its right to approve the settlement, yet defendant entered a settlement without plaintiff's consent. <u>Id.</u>; <u>accord</u> <u>Lloyd</u>, 2014 WL 222023, at *2. This leaves no material issue of fact to be resolved both as to defendant's failure to provide statutorily required notice and his settlement of his claim against GEICO's insured without plaintiff's consent. <u>See</u> <u>Bowden</u> 128 N.C. App at 320; <u>cf.</u> <u>Hoffman</u>, 166 N.C. App. at 429 ("[Insured's] claim for . . . benefits [is] absolutely barred by his failure to comply with the specific notice requirements [of the relevant statute]."). Therefore, plaintiff has shown that it is entitled, as a matter of law, to declaratory judgment stating it owes no UIM coverage under the Essentia Policy to defendant in respect to the September 22, 2019, accident.

Defendant argues nonetheless that <u>Great American Insurance Co. v. C. G. Tate Construction Co.</u> 303 N.C. 387 (1981) ("<u>Great American I</u>"), requires a different result. In <u>Great American</u>, the court held that the "failure of an insured to notify its insurer of an accident 'as soon as practicable' [as required by its policy] does not relieve the insurer of its obligations under the contract unless the delay operates materially to prejudice the ability of the insurer to investigate and defend." 303 N.C. at 396; <u>see</u> <u>Great Am. Ins. Co. v. C.G. Tate Constr. Co.</u>, 315 N.C. 714, 719

(1986) ("Great American II") ("In Great American this Court redefined the 'notice as soon as practicable' provision to mean that the requirement is satisfied despite any delay in notifying the insured, so long as it is occasioned in good faith and the insurer is not materially prejudiced."); Silvers v. Horace Mann Ins. Co., 324 N.C. 289, 297 (1989) ("In [Great American] . . . , this Court considered a condition precedent in an insurance policy requiring the insured to give the insurer notice of an accident 'as soon as practicable.'").

The Supreme Court of North Carolina has not addressed whether the Great American test applies to the statutory notice provision of § 20-279.21(b)(4).[4]  By its holding, Great American applies to notification of "an accident" under an insurance policy.  303 N.C. at 396.  Nonetheless, North Carolina courts have described Great American in broad terms, stating, for example, that "[i]n [Great American], this Court articulated a three-pronged test for determining whether late notice to an insurer bars recovery."  Liberty Mut. Ins. Co. v. Pennington, 356 N.C. 571, 579-80 (2002); Silvers, 324 N.C. at 297 (explaining that, in Great American, the state supreme court "held that failure to comply with the notification requirement did not relieve the insurer of its contractual obligations unless it suffered material prejudice in its investigation and defense under the policy" and that it would remand for determination of "whether [insurer] was materially prejudiced by [insured's] failure to notify it and to procure its consent to settle"); Bond/Tec, Inc. v. Scottsdale

---

[4]        "A federal court, sitting in North Carolina in a diversity case, must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of that state would rule."  Brendle v. Gen. Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir. 1974); see Nature Conservancy v. Machipongo Club, Inc., 579 F.2d 873, 875 (4th Cir. 1978) (per curiam).  However, where the highest state court "has spoken neither directly nor indirectly on the particular issue," the federal court must "predict how that court would rule if presented with the issue" and "[i]n so predicting, . . . decisions . . . [of] the state's intermediate appellate court[] constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise."  Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002) (quotations omitted).  Yet, "sitting in diversity, a federal court 'should not create or expand [a] State's public policy.'"  Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (quoting St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995)); Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992) ("Absent a strong countervailing federal interest, the federal court . . . should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law.").

Ins. Co., 174 N.C. App. 820, 824 (2005) ("[I]n North Carolina an insurer may not rely upon the breach of consent-to-settlement, notice, or cooperation provisions in order to relieve itself of liability to pay the claim; the insurer must demonstrate prejudice to its ability to investigate or defend the claim.").

Although these decisions extended beyond Great American's original holding, the cases in which North Carolina courts have used the Great American test considered policy provisions, and typically policy provisions providing that notice be given "as soon as practicable" or "promptly." See, e.g., Great American I, 303 N.C. at 396; Pennington, 356 N.C. at 578 ("[T]he policy provides that the UIM claimant must '[p]romptly send [plaintiff] copies of the legal papers if a suit is brought.'"); Bond/Tec, Inc., 174 N.C. App. at 822 (considering a policy requirement that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [the insurer's] consent"); see also Metric/Kvaerner Fayetteville v. Fed. Ins. Co., 403 F.3d 188, 198 n.10 (4th Cir. 2005) ("[T]he policy provision in Great American (requiring notice 'as soon as practicable') and the relevant provision here (requiring notice '[a]s soon as possible') are substantially the same.").

Silvers v. Horace Mann Insurance Co., which also considered an older version of section 20-279.21(b)(4),[5] presents a closer question. The notice provision in that policy stated "[a]ny judgment for damages arising out of a suit is not binding on [the insured] unless [it] ha[s] been served with a copy of the summons, complaint or other process against the uninsured motorist" and was joined by a consent-to-settlement provision providing that "[the insurer] do[es] not provide Uninsured Motorists Coverage for property damage or bodily injury sustained by any

---

[5]    "The statute was amended in 1985 to provide for different procedures in claims for underinsurance benefits. Our discussion of the relevant statutory provisions concerns only the 1983 versions." Silvers, 324 N.C. at 293.

person . . . [i]f that person . . . settles the bodily injury or property damage without [its] written consent." Silvers, 324 N.C. at 297.

As an initial matter, in Silvers, the court considered the conflict between the "insurance policy and the relevant statute's predicat[ion] [of] UIM coverage on the insured's entitlement to recover from the tortfeasor" with the same policy's provision and N.C. Gen. Stat. § 279.21 (1983)'s requirement that a UIM insurer was not obligated to make any payment until the insured had exhausted the limits of liability coverage of the tortfeasor. See Silvers, 324 N.C. at 293-95.[6] The court reasoned that the conflict between the provisions "must be resolved in favor of the insured" and, accordingly, "plaintiff's entry of a consent judgment with the tortfeasors and their carrier does not bar her as a matter of law from recovering under the UIM coverage of her policy with" the UIM insurer. Id. at 295-96. The court also, as a separate matter, considered whether the plaintiff's failure to adhere to the "provisions in the policy requiring notice to the insurer and the insurer's consent before settlement" prohibited her from recovering UIM benefits from her insurer. The court found that "protecting the insurer's subrogation right appears to be the primary purpose of the consent-to-settlement-clause of the policy" and that, further, the insurer had "by the terms of its policy, waived any right of subrogation otherwise accorded it." Id. at 298-99. The court concluded by remanding the case in order for "the trial court to determine whether [the insurer] was materially prejudiced by plaintiff's failure to notify it and to procure its consent to settlement" under the relevant policy provisions. Id. at 299 (citing Great American I, 303 N.C. at 398).

---

[6] The court explained, "both the policy and the statute contain internally conflicting provisions." Silvers, 324 N.C. at 294-95. The conflict was that while "the statute and the policy terms regarding UIM coverage appear to require the insured to exhaust all liability policies by judgment or settlement before the insurer is obligated to pay under the UIM coverage," "a release of the tortfeasor acts to release the UIM insurance carrier of its derivative liability." Id. at 295.

While <u>Silver</u> discussed the 1983 version of section 20-279.21, it was in reference to the conflict between the requirements of derivative liability for UIM coverage and exhaustion of limits of liability to make a claim under UIM coverage. The notice and consent-to-settle portions of the decision were predicated on the insurance policy at issue, which admittedly did not contain any language to the effect of "as soon as practicable." <u>See id.</u> at 297-99. They were not based on the text of N.C. Gen. Stat. § 20-279.21(b)(4) as it currently reads. <u>See id.</u> at 293 n.3, 297-300. "The amendment referred to in <u>Silvers</u> added extensive procedures to N.C. Gen. Stat. § 20-279.21(b)(4) through which a UIM carrier may protect itself." <u>Gurganious</u>, 108 N.C. App. at 166 ("Pursuant to that subsection, a plaintiff is now required to notify the UIM insurance carrier when a claim is filed against the primary tort-feasor, and also when a settlement offer has been made.").

Accordingly, because it considered an older version of section 20-279.21, which lacked the relevant language discussed herein, and discussed notice only as it related to the relevant policy, <u>Silvers</u> is inapposite to the instant circumstances regarding statutory notice.

Consistent with this distinction, in <u>Bowden</u>, the North Carolina Court of Appeals held, without reference to <u>Great American</u>'s prejudice test, that because an insurer "did not receive the statutorily required written notice; . . . it did not waive its rights" regarding consent to settlement, and, therefore, summary judgment in its favor on plaintiff's UIM claim had been proper. 128 N.C. App at 319-20; <u>see also</u> <u>Hoffman</u>, 166 N.C. App. at 429 ("Plaintiff's claim for [uninsured motorist] benefits was absolutely barred by his failure to comply with the specific notice requirements as set forth in N.C. Gen. Stat. § 20–279.21(b)(3)(b)."); 3 William J. Schermer & Irvin E. Schermer, <u>Automobile Liability Insurance</u> § 42.2 (4th ed.), Westlaw (database updated Nov. 2020) ("Where the exclusion is authorized by statute, it is enforceable without a showing of prejudice by the insurer." (citing <u>Williams v. Bowden</u>, 128 N.C. App. 318 (1998)).

16

Viewing <u>Bowden</u> as exemplary and resting upon the plain language of the statutory text here, <u>Great American</u>'s prejudice test is not applicable in this context. Further, its application beyond the clear bounds of state court decisions would constitute impermissible policy expansion by a federal court sitting in diversity. See <u>Private Mortg. Inv. Servs.</u>, 296 F.3d at 312; <u>Jacobson</u>, 48 F.3d at 783; <u>cf.</u> <u>C.M. ex rel. J.M. v. Bd. of Educ. of Henderson Cty.</u>, 241 F.3d 374, 384 (4th Cir. 2001) ("[A] review of North Carolina case law indicates that its courts would not countenance any departure from, or relaxation of, statutory requirements." (citing, inter alia, <u>Williams v. Bowden</u>, 128 N.C. App. 318 (1998))). The court acknowledges the remedial purpose of the statute,[7] but, where the statutory text is clear and unambiguous as it is here in requiring notice, the court's duty is to give effect to the legislature's plain meaning. See <u>State v. Davis</u>, 364 N.C. 297, 302, (2010) ("Courts must give an unambiguous statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." (quotation omitted)); <u>Bowden</u>, 128 N.C. App. at 320 ("The written notice requirement of G.S. § 20-279.21(b)(4) is plain and clear.").

In an analogous context, the North Carolina Court of Appeals has held that the <u>Great American</u> test does not apply to section 20-279.21(b)(3)(b)'s "clear and unambiguous . . . statutory requirement" that "the insured, or someone in his behalf, <u>shall</u> report the accident within 24 hours or as soon thereafter as may be practicable, to a police officer," due, in part, to the subsection's specification of "the form, substance, or manner of the notice to be given." See <u>Hoffman</u>, 166

---

[7]        The stated public policy underlying the underinsured motorist provisions of North Carolina's compulsory motor vehicle insurance law is "remedial in nature and [the statute] is to be liberally construed to effectuate its purpose of providing coverage for damages to injured parties caused by insured motorists with liability coverage not sufficient to provide complete compensation for the damages." <u>Silvers</u>, 324 N.C. at 296; <u>Nationwide Mut. Ins. Co. v. Mabe</u>, 342 N.C. 482, 493 (1996) ("The North Carolina Motor Vehicle Safety and Financial Responsibility Act was promulgated for the purpose of providing compensation for innocent victims of financially irresponsible motorists." (quotation omitted)).

17

N.C. App. at 428-29. The <u>Hoffman</u> court noted that unlike the portion of section 20-279.21(b)(4) directing insured to "give notice of the initiation of the suit to the underinsured motorist insurer," which it described as "devoid of any particulars concerning the time frame when notice to the insurer must be provided" and lacking "direction and specificity," the provision regarding notice to police "prescribe[d] the type of notice, the content of the notice, [and] the method by which it is to be given." <u>See</u> <u>id.</u> at 428-29. The clear "direction and specificity" of section 20-279.21(b)(3)(b) indicated "the legislature's intent that plaintiff is subject to the more stringent requirements" of that section, rather than analysis under the more forgiving <u>Great American</u> standard. <u>See</u> <u>id.</u> at 429.

Here, section 20-279.21(b)(4)'s statutory requirement regarding notice upon settlement offer, like the one in <u>Hoffman</u>, specifies the form, substance, and manner of the notice to be given the insurance carrier. Section 20-279.21(b)(4) requires that the notice must be: (1) written; (2) sent before settlement; and (3) evidence the settlement offer that has been made including its value. <u>See</u> N.C. Gen. Stat. § 20-279.21(b)(4) ("No insurer shall exercise . . . any right to approve settlement . . . where the insurer has been provided with <u>written notice</u> <u>before a settlement</u> between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an <u>amount equal to the tentative settlement</u> within 30 days following receipt of that notice." (emphasis added)); <u>Bowden</u>, 128 N.C. App. at 320; <u>Gurganious</u>, 108 N.C. App. at 166. Unlike the provision of section 20-279.21(b)(4) with which the <u>Hoffman</u> court contrasted the relevant statutory requirement of subsection (b)(3), the instant provision of section 20-279.21(b)(4) regarding notice of settlement and settlement offers is not "devoid of any particulars concerning the time frame when notice to the insurer must be provided"; it must be provided before settlement and, as interpreted by the state's courts, when settlement offers are made. <u>See</u> <u>Gurganious</u>, 108

18

N.C. App. at 166. Nor can the court say that the statutory provision here lacks "direction and specificity." Hoffman, 166 N.C. App. at 428-29. In summary, plaintiff need not show Great American-cognizable prejudice to prevail on its motion for judgment on the pleadings on its declaratory judgment claim.

Defendant also raises several arguments as to why what facially appears to be a settlement, based on the facts alleged in the pleadings, is in fact not. First, defendant argues the fact that the various discussions between plaintiff and defendant and plaintiff and GEICO, as well as written notice of the GEICO offer and written demand for plaintiff to tender policy limits, all took place before the executed and mailed GEICO Covenant was actually physically received by GEICO is, in some undescribed way, meaningful to the question of settlement and notice under section 20-279.21(b)(4). Defendant does not explain how this would negate his otherwise clear acceptance of GEICO's offer in the form of the GEICO Covenant, which defendant signed, seemingly communicated to GEICO he had signed, as evidenced by the transfer in funds, and received the benefit of before returning the funds to his counsel's trust account after learning that plaintiff understood him to have settled without its consent. See Bowden, 128 N.C. App. at 319 (explaining that when insured "gave a 'Covenant Not to Enforce Judgment'" in consideration for funds, he had settled within the meaning of section 20-279.21(b)(4) and done so without requisite notice). Additionally, GEICO's alleged initial agreement on March 17 to hold the signed and executed GEICO Covenant in abeyance, (see Answer ¶ 18) — for which GEICO had transferred funds over that defendant had already dispersed to his account before quickly returning the funds to his counsel's trust account after the conversation with Shepstone — does not affect this analysis, especially when GEICO ultimately informed defendant that it could not voluntarily agree to

withdraw from the signed and mailed GEICO Covenant, (Answer ¶ 18; Pl.'s Memo. Supp. Mot. (DE 16) at 16).

Second, defendant claims that the covenant was "contingent upon a waiver of subrogation from any other insurance that may contribute to [his] bodily injury claim," citing a letter from GEICO dated February 1, 2020, and that "the Covenant was subject to recission since it was executed under a mutual mistake of fact." (Answer ¶¶ 12, 30). Defendant's selective quotation of the February 1 letter omits the further language that the tendered policy limit of $50,000.00 by GEICO was an "offer contingent upon a waiver of subrogation from any other insurance that may contribute to [defendant's] bodily injury claim, a full release <u>or a covenant not to enforce judgment</u>." (Answer Ex. 2, (DE 10-2) at 1 (emphasis added)). Further, defendant's claim that the GEICO Covenant was rescissible because of a mutual mistake of fact finds no support in the law, and indicates his acknowledgement that he had entered into a contract with GEICO. <u>See, e.g.</u>, <u>Sudds v. Gillian</u>, 152 N.C. App. 659, 663 (2002) ("Plaintiff does not assert the existence of any fact or term in the release that is incorrect, was omitted in error, or whose legal import was misunderstood by both parties. Nor does he allege that either party misunderstood the general meaning or effect of the release. We conclude that plaintiff has alleged only his unilateral mistakes, and that, viewing the evidence in the light most favorable to plaintiff, no genuine issue of fact exists as to whether the release was executed pursuant to a mutual mistake of fact."); <u>see also</u> <u>Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.</u>, 288 N.C. 122, 135 (1975) ("[F]ormation of a binding contract may be affected by a mistake. Thus, a contract may be avoided on the ground of mutual mistake of fact."); <u>cf.</u> <u>Woodring v. Swieter</u>, 180 N.C. App. 362, 367 (2006) ("[D]eeds containing mutual mistakes are merely voidable and not void.").

In sum, viewing the facts alleged in the pleadings in the light most favorable to him, defendant's failure to adhere to North Carolina's statutory notice requirements in regard to settling his UIM claim bars a claim of coverage under his UIM policy. Accordingly, plaintiff, as a matter of law, is entitled to the declaratory judgment it requests: that it owes no UIM benefits under the Essentia Policy to defendant for any bodily injuries he sustained as a result of the September, 22, 2019, car accident described in the pleadings.

2. Motion to Dismiss[8]

Pursuant to Rule 12(b)(6), plaintiff seeks dismissal of all of defendant's counterclaims for failure to state a claim upon which relief can be granted, except for defendant's counterclaim for declaratory judgment, which, by virtue of the requested relief, has been resolved by the court's above disposition of plaintiff's motion for judgment on the pleadings. Even taking defendant's well-pleaded facts as true, his counterclaims fail to state claims upon which relief can be granted. Accordingly, plaintiff's motion to dismiss is granted, for reasons discussed below.

a. Breach of Contract

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276 (2019) (quotation omitted); accord Edwards v. Genex Coop., Inc., 777 F. App'x 613, 624 (4th Cir. 2019) ("Under North Carolina law, '[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.'" (quoting Poor v. Hill, 138 N.C. App. 19, 25 (2000))).

---

[8] The court decides plaintiff's motion to dismiss only on the facts alleged in defendant's claim for relief, that is, the portion of the answer labeled "counterclaims," (see (DE 10) at 8-23 (hereinafter "Counterclaim")), and other documents reviewable in this procedural context, see Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (explaining that, in evaluating a motion to dismiss a pleading, the court may "consider documents that are explicitly incorporated into the [pleading] by reference[,] . . . those attached to the [pleading] as exhibits[,] . . . [and those] submitted by the movant . . . , so long as the document was integral to the [pleading] and there is no dispute about the document's authenticity").

Here, defendant alleges that plaintiff breached the operative insurance contract by "failing to advance funds to [defendant] under Section C2, C.1 of the policy" and by "failing to provide underinsurance coverage to [defendant]." (Counterclaim ¶ 38). However, the court concludes that defendant has failed to state a claim for breach of contract under North Carolina law because, applying the relevant policy provisions to the facts alleged, plaintiff did not breach any provisions of its insurance policy contract with defendant.

Plaintiff did not have a statutory duty to provide defendant UIM coverage as more fully explained in reference to the resolution of plaintiff's motion for judgment on the pleadings. Nor did it have a duty to do so under the policy's exclusion provisions, which provide plaintiff does "not provide coverage for bodily injury caused by an underinsured motor vehicle and sustained by any insured . . . [i]f that insured . . . settles the bodily injury claim without [its] consent," making an exception only where plaintiff has received "written notice in advance of a settlement" and has "fail[ed] to advance payment to the insured in an amount equal to the tentative settlement within thirty days." (Compl. Ex. A, (DE 1-1) at 12).

Taking the pleaded facts in the light most favorable to defendant, but not crediting his legal conclusions, the facts as alleged in the counterclaim still fail to give rise to a reasonable inference that plaintiff breached its contract with defendant. By "signing a Covenant Not To Enforce Judgment with GEICO as described in the Complaint," (Counterclaim ¶ 21), and accepting funds for the execution of the covenant into his counsel's trust accounts with a portion disbursed to him, (see Counterclaim ¶ 22; Compl. ¶¶ 12, 17, 19; Answer ¶¶ 12, 17, 19), defendant settled a claim for bodily injury caused by an underinsured motor vehicle without providing written notice to plaintiff or opportunity for plaintiff to advance funds equal to the tentative settlement. Further, the insurer of the underinsured driver, GEICO, expressed that, despite its initial agreement, it would not hold

22

the GEICO Covenant in abeyance, meaning that the initial tentative settlement had been finalized. (Counterclaim ¶¶ 23-24). Therefore, under its exclusionary provision, plaintiff was within its contractual rights to deny defendant's claim. See Nelson, 177 N.C. App. at 609 ("[I]f an insurance company rightly denies an insured's claim, . . . [it] therefore does not breach its contract . . . .").

Defendant argues that Great American's holding that "failure of an insured to notify its insurer of an accident 'as soon as practicable' [as required by its policy] does not relieve the insurer of its obligations under the contract unless the delay operates materially to prejudice" the insurer, see 303 N.C. at 396, prevents resolution of this issue at the motion to dismiss stage. Even assuming that Great American's reach is as broad as North Carolina's courts have hinted, see, e.g., Pennington, 356 N.C. at 579-80 ("In [Great American], this Court articulated a three-pronged test for determining whether late notice to an insurer bars recovery."); Silvers, 324 N.C. at 297, reaching a notice-of-settlement policy requirement that does not mention a flexible as-soon-as-practicable requirement, the facts as pleaded by defendant evince prejudice to plaintiff.

> When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, e.g., that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

Great American I, 303 N.C. at 399; Nationwide Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 122 N.C. App. 449, 453 (1996) ("The trier of fact must make findings as to whether notice was given as soon as practicable, and if it was not, as to whether the insured . . . acted in good faith. If [the insured] acted in good faith, the trier of fact must then determine whether [the insurer] was materially prejudiced by the delay."). "[T]he prejudice with which [Great American] is concerned is that relative to the ability of the insurer to investigate and defend the claim in question." Pennington, 356 N.C. at 581; see also Silvers, 324 N.C. at 298-99 (explaining that "the primary

23

purpose of the consent-to-settlement clause" is "protecting the insurer's subrogation right"). Accordingly, North Carolina courts have held that, when an insurer waives its subrogation rights by renouncing that right in the underinsurance context through the text of its policy, "it has suffered no prejudice by plaintiff's noncompliance with the notice provisions of the policy." Rinehart v. Hartford Cas. Ins. Co., 91 N.C. App. 368, 374 (1988); McCrary ex rel. McCrary v. Byrd, 148 N.C. App. 630, 637 (2002) ("If an insurer has waived its right to subrogation, an insured's failure to obtain the insurer's consent before entering into a settlement agreement does not, as a matter of law, bar the insured's recovery against the insurer for underinsured motorist coverage."); S.C. Ins. Co. v. Hallmark Enters., 88 N.C. App. 642, 649-50 (1988) (finding that an insurer was prejudiced by insured's breach of notice provision where insured entered into valid and enforceable default judgment before giving notice of suit, which prevented insurer from investigating or litigating the action).

Here, the court will presume for the sake of argument, viewing the facts in the light most favorable to defendant, that a trier of fact would find that notice was given as soon as practicable and that defendant would meet the good faith test. Even then, no material issue of fact remains to be resolved as to whether plaintiff was prejudiced by defendant's noncompliance with the policy's notice provision.

Plaintiff's policy does not contain language that its right to recover does not apply under the relevant coverage, so it has not waived its rights to subrogation for the payment of the underinsured motorist claim. Ergo, unlike the insured in Rinehart, it cannot be said to have avoided prejudice by plaintiff's noncompliance with the notice provisions of the policy for that reason.

Although

section 20-279.21(b)(4) now provides that individuals injured in car accidents may execute contractual covenants not to enforce judgment in favor of tortfeasors as

24

consideration for payment of the liability policy limits and that the execution of such a covenant does not preclude the injured party from seeking any available UIM benefits,

N.C. Farm Bureau Mut. Ins. Co. v. Edwards, 154 N.C. App. 616, 622 (2002), this does not answer the question of prejudice to the insurer.  But see also N.C. Gen. Stat. § 20-279.21(b)(4) ("A covenant not to enforce judgment shall not preclude the injured party from pursuing available underinsured motorist benefits, unless the terms of the covenant expressly provide otherwise, and shall not preclude an insurer providing underinsured motorist coverage from pursuing any right of subrogation.").[9]  Here, defendant specifically alleges that plaintiff's right to subrogate has been extinguished based on its alleged facts, (Counterclaim ¶ 22; Answer ¶¶ 20, 35), contradicting his argument that plaintiff has not suffered prejudice.  Cf. Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[W]e have found no case from this or any other circuit suggesting that a trial court must consider contradictory factual allegations made in a brief opposing a motion to dismiss when ruling on a 12(b)(6) motion . . . and most certainly . . . not . . . when the facts . . . contradict those alleged in the complaint."); Liberty Mut. Ins. Com-Pany v. Lewis, No. 1:18-CV-01464-JRS-DLP, 2018 WL 6181394, at *1 (S.D. Ind. Nov. 26, 2018); Zemer v. Am. Home Mortg. Servicing, Inc., No. 11–15364, 2013 WL 766168, at *3 (E.D. Mich. Feb. 28, 2013) (finding plaintiff's allegation of breach of mortgage agreement "contradicts  other allegations in

---

[9]     The agreement by one party to a contract with a non-party is of questionable binding effect on the other party to the contract, meaning that the express reservation of UIM rights, which are a creature of the insured and UIM insurer's contract, in a document executed with another party is of questionable efficacy.  Cf. Silver, 324 N.C. at 296 n.4 (explaining that while "[t]he Court of Appeals appear[ed] to have attached some significance to plaintiff's reservation of her right to UIM benefits against [defendant-insurer] in the consent judgment, the instant court "d[id] not consider this reservation of rights significant" because defendant-insurer "was not a party to the consent judgment; therefore, the terms of the judgment cannot bind it").  See generally Simpson, North Carolina Uninsured and Underinsured Motorist Insurance § 3:2 ("[T]he efficacy of this provision [regarding covenants not to enforce judgment] is not clear . . . . [I]f the UIM insurer advances in response to the liability insurer's tender, there will be no settlement, and the insured will not execute a covenant; if the UIM insurer fails to advance, there will be a settlement, and the insured will execute a covenant, but the UIM insurer will have no subrogation rights to pursue.").

[plaintiff's] complaint and response brief" and dismissing claim on that basis). Defendant alleges that plaintiff has lost its ability to litigate the relevant claim, while also contending that his pleadings do not demonstrate that defendant has suffered <u>Great American</u>-cognizable prejudice, that is, harm to the ability to "investigat[e] or litigat[e] the claim." <u>See</u> <u>Bond/Tec, Inc.</u>, 174 N.C. App. at 824.

Accordingly, while prejudice under <u>Great American</u> typically is a fact question, where, as here, the insured specifically claims that an insurer's subrogation rights have been extinguished, the insured fails to plausibly allege that the insurer has not suffered prejudice and that its denial of coverage based on procedural default was a breach of contract. <u>See</u> <u>Iqbal</u>, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they <u>plausibly</u> give rise to an entitlement to relief." (emphasis added)); <u>cf.</u> <u>Metric/Kvaerner Fayetteville</u>, 403 F.3d at 200 (affirming district court's holding at the summary judgment stage that existence of "the Prejudice Element of the <u>Great American</u> test" had been shown as a matter of law). Based on the counterclaim's allegations, plaintiff "rightly denie[d] an insured's claim, and therefore d[id] not breach its contract." <u>See</u> <u>Nelson</u>, 177 N.C. App. at 609. On these grounds, the court grants plaintiff's motion to dismiss defendant's counterclaim for breach of contract.

> b. Bad Faith

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." <u>Bicycle Transit Auth., Inc. v. Bell</u>, 314 N.C. 219, 228 (1985). More specifically, North Carolina "law imposes on the insurer the duty of carrying out in good faith its contract of insurance," including the insurer's "right to effectuate settlement." <u>Alford v. Textile Ins. Co.</u>, 248 N.C. 224,

229 (1958) ("[C]ourts have consistently held that an insurer owes a duty to its insured to act diligently and in good faith in effecting settlements within policy limits . . . .").

"To establish a claim for bad faith refusal to settle, [the insured] must show: (1) 'a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct.'" Topsail Reef Homeowners Ass'n, 11 F. App'x at 237 (quoting Lovell v. Nationwide, 108 N.C. App. 416, 421 (1993)).[10] Bad faith does not arise where there is an "honest disagreement" regarding the value of a claim. Lovell, 108 N.C. App. at 421. And in this context, bad faith also means "not based on . . . innocent mistake." Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396 (1985); see also ABT Bldg. Prod. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 125 n.32 (4th Cir. 2006).

Here, accepting the facts as pleaded in the counterclaim but not crediting defendant's bare claims of bad faith, the reasonable inference that arises is that the parties honestly disagreed with one another on the validity of defendant's UIM claim. Acknowledging defendant's claim that Shepstone's call to GEICO informing it that should it hold defendant's executed covenant not to enforce in abeyance, plaintiff would exercise its subrogation rights against GEICO's insured constitutes a wrongful act — a legal conclusion the court discusses below in regard to defendant's wrongful interference claim — the facts as alleged do not contain the kind of outrageous conduct needed for a claim of bad faith refusal to settle. See Dailey, 75 N.C. App. at 396 (explaining that a bad faith refusal to settle was evinced by a "record . . . replete with evidence of [insurer's] malice, oppression, wilfulness and reckless indifference to consequences"); see also Cash v. State Farm

---

[10]     The court relies on this, and any, statement of the prima facie elements not as a pleading requirement but rather as instructional as to the kind of requisite well-pleaded facts necessary to raise a right to relief under a claim of bad faith refusal to settle above the speculative level. See generally Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" (internal citation omitted) (quoting Twombly, 550 U.S. at 555)).

Mut. Auto. Ins. Co., 137 N.C. App. 192 (2000) ("[A]n insurer may act in its own interest in settlement of the claim . . . .").  Nor do the facts alleged give rise to a reasonable inference that plaintiff "had determined that the claim was valid and that [plaintiff] nevertheless refused to pay . . . in bad faith with intent to cause further damage to [defendant]."  Michael v. Metro. Life Ins. Co., 631 F. Supp. 451, 455 (W.D.N.C. 1986) (explaining that such intent to cause harm would be needed to allow punitive damages for plaintiff's claim of "tortious, bad faith refusal to settle").

            c.      Wrongful Interference with Prospective Contract

        While more commonly described as "tortious interference with prospective economic advantage," see, e.g., 6 Strong's North Carolina Index 4th § 195, Westlaw (database updated Feb. 2021), this "tort arises when a party interferes with a business relationship 'by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, . . . if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.'" Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 368 N.C. 693, 701 (2016) (omission in original) (quoting Spartan Equip. Co. v. Air Placement Equip. Co., 263 N.C. 549, 559 (1965)).  "The term 'malice' is used in this connection in its legal sense, and denotes the intentional doing of the harmful act without legal justification."  Childress v. Abeles, 240 N.C. 667, 675 (1954) (analyzing the tort of tortious interference with contract).

        The parties disagree on what the operative contract or prospective contract with which plaintiff is alleged to have interfered.  Defendant's counterclaim discusses both an alleged agreement to hold the GEICO Covenant in abeyance and a prospective agreement between GEICO and defendant "to rescind the [GEICO] Covenant if necessary." (Counterclaim ¶¶ 50-52).  Defendant's response focuses argument on the alleged "agreement to hold the covenant in

abeyance." (Def.'s Memo. Opp'n (DE 18) at 23). Plaintiff, on the other hand, focuses argument on the actual GEICO Covenant as the relevant contract.

Assuming without deciding that defendant's alleged agreement with GEICO to hold the covenant in abeyance or possible agreement with GEICO to rescind the covenant are contracts that could cognizably be interfered with under North Carolina tort law,[11] on the facts alleged in the counterclaim, such interference was a legitimate exercise of plaintiff's rights. Plaintiff, if the settlement was rescinded or not effected, would, assuming it met section 20-279.21's requirements, be able to subrogate against GEICO's insured, meaning that, when it stated such to GEICO, it was merely expressing its intent to engage in a legitimate exercise of its rights as an insurer. Moreover, in so far as defendant claims that GEICO and defendant could possibly enter a contract to rescind the covenant,[12] this fails to meet North Carolina tort law's requirement of allegation, supported by well-pleaded fact, "that a contract would have resulted but for a [tortfeasor's] malicious intervention." Beverage Sys., 368 N.C. at 701 (emphasis added). The facts alleged give rise to a reasonable inference that GEICO agreed, the court assumes contractually, to hold the covenant in abeyance, but the alleged facts only evince defendant's expectation that GEICO could potentially rescind the covenant.

In sum, even assuming that the alleged agreements constitute contracts or prospective economic advantage capable of being tortiously interfered with, the facts as alleged do not give rise to a reasonable inference that plaintiff illegitimately exercised its rights or that defendant had

---

[11]     Defendant does not meaningfully engage with the question of whether such agreements would constitute more than "[a] mere promise, [which] without more . . . lacks of consideration and is unenforceable." Stonestreet v. S. Oil Co., 226 N.C. 261, 263 (1946).

[12]     For reasons discussed previously, the court is unpersuaded that, even on the facts alleged, plaintiff has stated a claim for mutual mistake of fact in execution of the contract. See, e.g., Sudds, 152 N.C. App. at 663 ("Plaintiff does not assert the existence of any fact or term in the release that is incorrect, was omitted in error, or whose legal import was misunderstood by both parties [and instead] . . . plaintiff has alleged only his unilateral mistakes . . . .").

more than an expectation that GEICO might enter into an additional contract to rescind the covenant. Accordingly, the court dismisses defendant's counterclaim for wrongful interference with prospective contract.

> d. UDTPA

North Carolina declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001). "The determination of whether an act or practice is an unfair or deceptive practice that violates [N.C. Gen. Stat.] § 75-1.1 is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000).

Relatedly, N.C. Gen. Stat. § 58-63-15(11) enumerates, in relation to insurance law, certain unfair claim settlement practices. Gray, 352 N.C. at 68. Courts may "look[] to [N.C. Gen. Stat.] § 58-63-15(11) for examples of conduct to support a finding of unfair or deceptive acts or practices," and conduct that violates "[N.C. Gen. Stat.] § 58-63-15(11) constitutes a violation of [N.C. Gen. Stat.] § 75-1.1, as a matter of law." See id.; Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 10 (1996) ("Violation of any form of conduct listed in § 58-63-15(11) operates as a per se instance of unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1."); see also Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018) ("[T]he remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." (quotation omitted)).

Normally, a successful section 58-63-15(11) claim requires a showing that the allegedly unfair conduct was "commit[ed] or perform[ed] with such frequency as to indicate a general

business practice." N.C. Gen. Stat. § 58-63-15(11). However, "such conduct that violates [section 58-63-15(11)] constitutes a violation of [N.C. Gen. Stat.] § 75-1.1, as a matter of law, without the necessity of an additional showing of frequency indicating a 'general business practice,'" because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." See Gray, 352 N.C. at 68 (deciding the issues specifically on subparagraph (f) of § 58-63-15(11)); Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246 (2002) ("It follows that the other prohibited acts listed in [N.C. Gen. Stat.] § 58-63-15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and that such acts therefore fall within the 'broader standards' of [N.C. Gen. Stat.] § 75-1.1."). However, "egregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect." Ellis v. La.–Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012); Elliott, 883 F.3d at 396 ("Critically, to plead a successful UDTPA claim, a plaintiff must allege egregious or aggravating circumstances.").

Here, defendant primarily relies on section 58-63-15(11) for his claim under section 75-1.1, as well as adjoining by reference the bases for his fourth and fifth counterclaims: breach of duty of good faith and wrongful interference with prospective contract. Accordingly, the court's analysis focuses on section 58-63-15(11) as a basis for defendant's UDTPA claim, and specifically those subparagraphs of section 58-63-15(11) relied upon by defendant. (See Counterclaim ¶ 33).

i.     § 58-63-15(11)(a)

Subparagraph (a) of section 58-63-15(11) states that "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" is an unfair claim settlement practice. N.C. Gen. Stat. § 58-63-15(11). Although North Carolina's courts have not fulsomely analyzed subparagraph (a) or defined misrepresentation in this context, "[i]n making a claim of unfair and deceptive trade practices on a theory of misrepresentation or fraud, a plaintiff must show that a

31

defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception." Hospira Inc. v. Alphagary Corp., 194 N.C. App. 695, 702 (2009) (quoting Marshall v. Miller, 302 N.C. 539, 548 (1981)). And "a claim under section 75–1.1 stemming from an alleged misrepresentation does indeed require a [claimant] to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88 (2013).

Defendant's counterclaim does not expound on a factual basis for the claim that plaintiff misrepresented pertinent facts or insurance policy provisions relating to the coverage at issue, beyond the bare assertion that plaintiff did so. Nor does defendant, in his briefing, enlighten the court as to: his theory of plaintiff's liability under section 58-63-15(11)(a); which policy provision was misrepresented; or how defendant relied on any statement by plaintiff. Accordingly, relying on the oft-repeated idiom that "judges are not like pigs, hunting for truffles buried in briefs," United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991), the court will not make a legal argument for defendant where he has not proffered one himself. Accordingly, finding only "legal conclusions" and "bare assertions devoid of further factual enhancement" scaffolding defendant's section 58-63-15(11)(a) claim, the court concludes that defendant has failed to state a claim under that section. See Nemet Chevrolet, 591 F.3d at 255.

ii.    § 58-63-15(11)(d)

Subparagraph (d) delineates refusal "to pay claims without conducting a reasonable investigation based upon all available information" as an unfair claim settlement practice. N.C. Gen. Stat. § 58-63-15(11)(d).

Here, even accepting those inferences warranted by the facts in defendant's counterclaim, he has not pleaded sufficient factual support for a UDTPA claim premised on plaintiff's alleged

32

failure to conduct a reasonable investigation prior to denying defendant's claim. At the time of plaintiff's alleged denial of defendant's claim,[13] per the facts pleaded by defendant, the investigation reasonably ended based on all the available information to plaintiff, who had already done some level of investigating to become aware that defendant had accepted a settlement offer from GEICO, executed a release, and received compensation. (See Compl. Ex. F; Counterclaim ¶¶ 17, 21-22). Plaintiff confirmed this by requesting copies of the executed documents sent to Integon and GEICO, which defendant sent. (Counterclaim ¶ 21). Thereafter, plaintiff formally denied defendant's UIM claim by letter. (Counterclaim ¶ 25). The facts only give rise to an inference that plaintiff possibly, rather than plausibly, failed to reasonably investigate, meaning defendant's right to relief under section 58-63-15(11)(d) only rises to a speculative level. See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating relevant Rule 12(b)(6) standard).

However, defendant argues that the following timeline of events show that plaintiff refused to pay his claim without conducting a reasonable investigation based upon all available information: defendant was called by Shepstone on March 17, 2020, causing defendant to send a letter detailing GEICO's tender of limits to plaintiff the same day.[14] The next day, defendant sent a written demand for the limit of his underinsured motorist coverage under his policy with plaintiff. Plaintiff responded by email, through Shepstone, stating plaintiff's understanding that GEICO had

---

[13] The court assumes for the purposes of resolving this motion that the March 18, 2020, email from Shepstone acted as a denial of defendant's claim, although it is not explicit in that email, because the court must take all inferences from that document in the light most favorable to defendant. (See also Compl. ¶ 26 ("Hagerty sent correspondence to [d]efendant . . . advising that . . . there was . . . no underinsured motorist coverage available to [d]efendant . . . under the Essentia Policy for the injuries sustained in the Accident.")).

[14] The letter is attached to the complaint as Exhibit D and would normally not be a part of the court's review of plaintiff's motion to dismiss; however, the letter is specifically cited to by defendant for its substance, and it is therefore "explicitly incorporated into the [counterclaim] by reference." See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). The same is also true of Exhibit E to the complaint. (See Counterclaim ¶ 19).

insured the at-fault party, that defendant had accepted a settlement offer from GEICO, and that defendant had executed a release under his UIM coverage, and citing the exclusion section of defendant's policy with plaintiff regarding consent-to-settle and section 20-270.21(b)(4)'s written notice provision.  (See Compl. Ex. F (DE 1-6)).[15]  Defendant urges that the circumstances here are the same as those in Martini v. Companion Property & Casualty Insurance Co., 198 N.C. App. 39 (2009), rev'd, 364 N.C. 234 (2010) (per curiam), where the North Carolina Court of Appeals held that, inter alia, the trial court had erred in granting summary judgment to defendant-insurer on plaintiff-insured's UDTPA claim premised on N.C. Gen. Stat. § 58-63-15(11).  198 N.C. App. at 47.  As the majority reasoned, the insured had "specifically allege[d] that defendant failed to conduct a reasonable and complete investigation before denying plaintiff's claim . . . [and] before speaking directly to plaintiff" in addition to "alleg[ing] that defendant failed to follow its claims handling guidelines."  Id.

The factual scenario here is distinct from that in Martini.  Further, the dissenting opinion in Martini, which the Supreme Court of North Carolina adopted the reasoning of in part on review, see 364 N.C. at 234-35, "disagree[d] with the majority's assertion that the allegations in plaintiff's unverified complaint are sufficient to raise genuine issues of material fact" and, instead, found that it was the "conflicting evidence in the parties' depositions, answers to interrogatories, and affidavits" that gave rise to genuine issue of material fact, not the factual allegations relied on by

---

[15]    Defendant's counterclaim cites paragraph 26 of the complaint for the proposition that "as set forth in the Complaint, [p]laintiff notified [defendant] that no underinsurance motorist coverage was available to him under the policy due to the alleged settlements with GEICO and Integon." (Counterclaim ¶ 20 (emphasis added)).  The complaint itself states that "Hagerty sent correspondence to [d]efendant . . . advising that Hagerty understood [d]efendant . . . had previously entered into the aforementioned settlements in connection with the Accident, and that there was therefore no underinsured motorist coverage available to Defendant . . . under the Essentia Policy for the injuries sustained in the Accident," referencing Exhibit F of the complaint.  Notably, defendant's answer states that "[p]laintiff [sic] admits that Exhibit F was sent to [p]laintiff's [sic] counsel on March 18, 2020." (Answer ¶ 26).  Accordingly, the court reviews Exhibit F as part of its disposition of the instant motion to dismiss. See Goines, 822 F.3d at 166 (explaining that the court may review documents not attached to the non-movant's pleadings where the document is "integral to and explicitly relied on in the [pleading], . . . , when the [document's] authenticity is not challenged").

the majority. See 198 N.C. App. at 52 (Steelman, J., concurring in part and dissenting in part). As already noted, the facts alleged in the counterclaim do not give rise to a reasonable inference that plaintiff failed to engage in a reasonable investigation based on all available information before it denied defendant's claim. Rather, based on the alleged facts, plaintiff, at the time it denied defendant's claim, was aware of defendant and GEICO's settlement.

Accordingly, plaintiff's motion to dismiss defendant's UDTPA claim as far as it is premised on this basis is granted without prejudice.

iii.    § 58-63-15(11)(f)

Subparagraph (f) states that it is an unfair claim settlement practice to "[n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.C. Gen. Stat. 58-63-15(11)(f). "[A] bad faith refusal to settle a claim cannot rest merely 'on honest disagreement or innocent mistake.'" ABT Bldg., 472 F.3d at 25 n.32 (quoting Dailey, 75 N.C. App. at 396). Accordingly, where an insurer "ha[s] reasonable bases to challenge the validity of [the insured's] claims," subparagraph (f) is not applicable. Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 234 (4th Cir. 2001); cf. also id. at 233 ("[A] reasonable, non-negligent misunderstanding regarding a policy term is insufficient to ground an UDTPA claim."); Jones v. Harrelson & Smith Contractors, LLC, 194 N.C. App. 203, 230 (2008) (Tyson, J., concurring) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and allege [an UDTPA claim] out of facts that are properly alleged as a breach of contract claim."), aff'd, 363 N.C. 371 (2009) (per curiam); Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42 (2006) ("A mere breach of contract, even if intentional, is not an unfair or deceptive act under [UDTPA].").

Here, as an initial matter, liability in favor of defendant was not sufficiently clear. As discussed above, whether defendant's claim under the Essentia Policy was valid despite defendant's failure to adhere to statutory notice procedure is not clearly and unequivocally answered by North Carolina law. Instead, the court finds that as a matter of law defendant's claim was not valid due to his failure to adhere to the statutory process. Accordingly, plaintiff had more than a reasonable basis to challenge defendant's claim submitted under his policy after he had already sent the signed GEICO Covenant and received the proceeds, two facts that explicitly premised plaintiff's denial of defendant's claim. (See Compl. Ex. F. (DE 1-6)). Even accepting defendant's well-pleaded facts in his counterclaim, he has not stated facts upon which the court can draw a reasonable inference that plaintiff did not attempt in good faith to effectuate prompt, fair, and equitable settlement of a claim in which liability had become reasonably clear. Defendant has failed to state a claim upon which relief can be granted under section 58-63-15(11)(f). Plaintiff's motion to dismiss defendant's claim on this basis also is granted.

iv.    § 58-63-15(11)(g)

Section 58-63-15(11)(g) prohibits "[c]ompelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured." N.C. Gen. Stat. § 58-63-15(11)(g). Typically, this "require[s] that the coverage issue be determined in favor of the insured," DENC, LLC v. Philadelphia Indem. Ins. Co., 426 F. Supp. 3d 151, 158 (M.D.N.C. 2019), and, like subparagraph (f), some evidence or allegation of bad faith. See, e.g., Majstorovic v. State Farm Fire & Cas. Co., No. 5:16-CV-771-D, 2018 WL 1473427, at *7 (E.D.N.C. Mar. 24, 2018) ("[N]o evidence suggests that State Farm believed the claim was worth approximately $19,000, but disputed the claim in order to force Majstorovic to litigate.").

36

Here, defendant has not alleged facts, beyond his bare quotation of subparagraph (g)'s statutory text, supporting an inference that plaintiff compelled him to institute litigation to recover amounts due under his UIM policy by offering substantially less than the amount ultimately recovered in actions brought by defendant. Even assuming that the substantially smaller offer defendant refers to here is plaintiff's denial of his claim, defendant does not point to any "action" that he has brought or to any North Carolina law supporting the proposition that signing a covenant not to enforce judgment meets the "amounts ultimately recovered" requirement. Further, although not dispositive, the fact that defendant himself did not bring this action but rather had the action brought against him further extends the instant situation from that described in the statute. Because defendant does not point to any North Carolina law supporting that this is the situation subparagraph (g) drafters imagined, the court, as a federal court sitting in diversity, does not deign to extend North Carolina law so. In sum, defendant has failed to state a claim under this subparagraph. For that reason, on motion of plaintiff, the court dismisses the portion of defendant's UDTPA claim premised on such.

v.      § 58-63-15(11)(m)

As to defendant's final cited unfair claim settlement practice, subparagraph (m) prohibits "[f]ailing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." N.C. Gen. Stat. § 58-63-15(11)(m). Nowhere does defendant elucidate what provisions of his UIM policy that plaintiff allegedly failed to settle under in order to influence defendant to settle under a separate distinguishable portion of coverage. The court will not sift through the policy's provisions to make such an argument for him. The court also grants plaintiff's motion as it relates to defendant's UDTPA claim premised on subparagraph (m).

37

At bottom, defendant's UDTPA claim as premised on alleged section 58-63-15(11) violations fails because defendant has not alleged the kind of aggravated conduct joined by bad faith that any UDTPA claim must be based on.  See, e.g., Elliott v. Am. States Ins. Co., 244 F. Supp. 3d 519, 524 (M.D.N.C. 2017), aff'd, 883 F.3d 384 (4th Cir. 2018).  But see also Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 609 (2006) ("[E]ven if an insurance company rightly denies an insured's claim, and therefore does not breach its contract, as here, the insurance company nevertheless must employ good business practices which are neither unfair nor deceptive.").

      vi.      Breach of Duty of Good Faith and Wrongful Interference with Prospective Contract

As independent bases for his section 75-1.1 claim, defendant's counterclaim cites plaintiff's alleged breach of duty of good faith and wrongful interference with prospective contract; however, for the reasons that the court concluded that defendant has failed to state claims under these theories on their independent merit, the court too concludes that he has failed to state a claim under these theories as predicate unfair acts substantiating a UDTPA claim.

      e.      Punitive Damages

"According to well-established North Carolina law, punitive damages may not be awarded based upon the breach of a contract in the absence of the commission of an identifiable tort." SciGrip, Inc. v. Osae, 373 N.C. 409, 428 (2020); Burger Chef Sys., Inc. v. Melfred Co., 547 F.2d 786, 791 (4th Cir. 1976) (explaining that, in analyzing a claim of aggravated fraud, the counter-defendant's "obstinacy . . . d[id] not amount to the degree of reprehensibility required by the North Carolina courts to award punitive damages when the dispute grows out of a breach of contract"); see also Newton v. Standard Fire Ins. Co., 291 N.C. 105, 112 (1976) ("Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied

by or partake of some element of aggravation before punitive damages will be allowed."). While "[b]ad faith refusal by an insurance company to settle a policy claim permits the recovery of punitive damages on claims for a tortious, bad faith refusal to settle," <u>Michael</u>, 631 F. Supp. at 455, as explained above, defendant has not stated a cognizable claim of bad faith refusal to settle or the commission of any identifiable tort by plaintiff. Accordingly, the court, too, dismisses defendant's coordinate claim for punitive damages.

## CONCLUSION

In accordance with the foregoing, plaintiff's motion for judgment on the pleadings in its favor is GRANTED, and plaintiff's motion to dismiss defendant's counterclaim is also GRANTED. The court ADJUDGES AND DECLARES that the Essentia Policy provides no underinsured motorist benefits coverage for defendant's bodily injuries sustained as a result of the September 22, 2019, car accident. The clerk is DIRECTED to enter judgment in this case, pursuant to Federal Rule of Civil Procedure 58, in favor of plaintiff on its declaratory judgment claim, stating the court's declaration as set forth herein. The clerk is further DIRECTED to close this case.

SO ORDERED, this the 30th day of March, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge